Frank W. Volk
United States District Judge

**Dated: March 31st, 2020**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>HARD ROCK EXPLORATION, INC.,<br>CARALINE ENERGY COMPANY,<br>BROTHERS REALTY, LLC,<br>BLUE JACKET GATHERING, LLC, and<br>BLUE JACKET PARTNERSHIP,<br>*Joint Administration*<br><br>           Debtors. | CASE NO. 2:17-bk-20459<br><br>CHAPTER 11<br><br><br><br><br><br><br><br>JUDGE FRANK W. VOLK |
| HARD ROCK EXPLORATION, INC.,<br>CARALINE ENERGY COMPANY,<br>BROTHERS REALTY, LLC,<br>BLUE JACKET GATHERING, LLC,<br>BLUE JACKET PARTNERSHIP,<br>JAMES STEPHENS, JR.,<br>MONICA FRANCISCO,<br>DUANE YOST, and<br>GREGORY LOUGHLIN<br><br>           Plaintiffs,<br><br>v.<br><br>THE HUNTINGTON NATIONAL BANK,<br>CHAD PRATHER, and<br>ROBERT W. LEASURE as<br>CHAPTER 11 TRUSTEE,<br><br>           Defendants. | ADVERSARY PROCEEDING NO.<br>2:17-mp-2001 |

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK,<br><br>      Plaintiff,<br><br>v.<br><br>HARD ROCK EXPLORATION, INC.,<br>CARALINE ENERGY COMPANY,<br>BROTHERS REALTY, LLC,<br>BLUE JACKET GATHERING, LLC,<br>BLUE JACKET PARTNERSHIP,<br>JAMES STEPHENS, JR.,<br>MONICA FRANCISCO,<br>DUANE YOST,<br>GREGORY LOUGHLIN,<br>ROBERT W. LEASURE as<br>CHAPTER 11 TRUSTEE,<br><br>      Defendants,<br><br>HARD ROCK EXPLORATION, INC.,<br>CARALINE ENERGY COMPANY,<br>BROTHERS REALTY, LLC,<br>BLUE JACKET GATHERING, LLC,<br>BLUE JACKET PARTNERSHIP,<br>JAMES STEPHENS, JR.,<br>MONICA FRANCISCO,<br>DUANE YOST,<br>GREGORY LOUGHLIN,<br>ROBERT W. LEASURE as<br>CHAPTER 11 TRUSTEE,<br><br>      Counter-Claimants,<br><br>v.<br><br>THE HUNTINGTON NATIONAL BANK,<br><br>      Counter-Defendant. | ADVERSARY PROCEEDING NO.<br>2:18-ap-2005 |

## **MEMORANDUM OPINION AND ORDER**

    Pending are the Joint Motions to Dismiss Debtors ("Motions to Dismiss") filed by

the Chapter 11 Trustee ("Trustee") and the Huntington National Bank ("HNB") in the above-

2

captioned adversary proceedings [mp dckt. 200; ap dckt. 99]. Duane Yost, James L. Stephens, Monica Francisco, and Gregory Loughlin (together, the "Objectors") lodged objections to the Motions to Dismiss [main case dckt nos. 985, 989, 997; mp dckt nos. 202, 203, 208; ap dckt. nos. 101, 102, 107]. In response, the Trustee filed Motions to Strike the Yost, Stephens, and Francisco objections in both the adversary proceedings and the main case [main case dckt no. 993; mp dckt. 204; ap dckt. 103].

The Court held a hearing on the above-listed matters on June 26, 2019, and subsequently ordered the parties to file post-hearing briefs. The briefing was completed on August 7, 2019. The matter is ready for adjudication.

### I.

**A.    Facts**

Hard Rock Exploration, Inc. ("Hard Rock"); Caraline Energy Company ("Caraline"); Brothers Realty, LLC ("Brothers"); Blue Jacket Gathering, LLC ("BJG"); and Blue Jacket Partnership ("BJP") (collectively the "Debtors") are affiliated entities organized under West Virginia law. The Debtors are independent oil and gas development companies who share a principal place of business in Charleston. The Debtors have developed over 350 miles of pipeline systems to gather and transport production from certain oil and gas wells.

The Objectors were principals and shareholders of the Debtors: James Stephens served as President of the Debtors, and he, along with Duane Yost, Monica Francisco, and Gregory Loughlin, also guaranteed the Debtors' obligations to HNB. HNB also required the Objectors to take out life insurance policies as collateral for the loans. Additionally, the Debtors served as

3

guarantors on several loans between the Objectors and HNB.

Prior to filing for Chapter 11 protection, the Debtors and Objectors were involved in two civil actions, one in the Circuit Court of Monongalia County, and the other in the Northern District of West Virginia. Both were eventually transferred here after the Debtors filed their petitions.

On September 5, 2017, the Debtors each filed separate Chapter 11 petitions. Shortly thereafter, they requested joint administration of the cases, and the Court granted the request. The case became a firestorm, characterized generally by vehement opposition on the part of HNB to many of the Debtors' requests and actions. The case progressed through much conflict until the Court entered a memorandum opinion determining the extent of HNB's lien in the Debtors' collateral on December 18, 2017 [dckt. 264]. Soon thereafter, the parties agreed to the appointment of a Chapter 11 Trustee, and Robert W. Leasure was designated as such on January 3, 2018. Once appointed Trustee, after requesting unsuccessfully that the Court reconsider portions of its memorandum opinion, Mr. Leasure appealed to the District Court [dckt. 264].

While that appeal was pending, the Trustee filed his Motion for Approval of Final Stipulation and Order Authorizing Use of Cash Collateral (the "Final Stipulation") [dckt. 474]. The Final Stipulation was approved by the Trustee, HNB, and the Official Committee of Unsecured Creditors. It enabled the Trustee to access cash collateral pursuant to a budget and retained the liens of HNB in the collateral. In pertinent part, the parties agreed that, upon approval of the Final Stipulation, the Trustee would file a motion to dismiss with prejudice all of the Debtors' claims and counterclaims against HNB enumerated in the two adversary proceedings, and HNB would do the same as to the Debtors (nos. 17-mp-2001 and 18-ap-2005), as discussed *infra*. The Final Stipulation also included a carve-out from the cash collateral for professional fees,

4

unsecured creditors, and Trustee fees. Additionally, the Trustee agreed to withdraw his appeal of the aforementioned memorandum opinion. No parties objected[1], and the Final Stipulation was approved on May 6, 2018.

On August 8, 2018, the Trustee moved for permission to surrender assets of the Debtors' estate for cash, namely, life insurance policies purchased by the Debtors to insure the lives of the Objectors. The policies were purchased with a $6,250,000 non-revolving credit line business loan extended to the Objectors by HNB, which was guaranteed by each of the Debtors. The Debtors eventually assigned the policies to HNB. The Trustee decided that the best course of action was to surrender the life insurance policies to the insurance company. Once done, the proceeds would be paid as follows: three percent (3%) would go to pay Trustee's fees, and the rest would be paid to HNB and would be used to pay down the indebtedness on the $6,250,000 note. The Objectors filed responses in opposition, but the Court granted the motion to surrender, following a hearing on September 7, 2019 [dckt. 657].

In the meantime, on February 16, 2018, in the Northern District of West Virginia, the Honorable Frederick P. Stamp, Jr., entered a memorandum opinion and order transferring here one of the earlier-referenced civil actions, *The Huntington National Bank v. Hard Rock Exploration, Inc., Caraline Energy Company, Blue Jacket Gathering, LLC, Blue Jacket Partnership, Brothers Realty, LLC, Duane Yost, James L. Stephens, Jr., Gregory Laughlin, and Monica R. Francisco*. The case had been pending since March 23, 2016, and was based on an alleged commercial breach of contract stemming from a series of loans made by HNB to the Defendants. While the civil action was pending in the North, Judge Stamp adjudicated dispositive

---

[1] The Official Committee of Unsecured Creditors approved of, and entered into, the Final Stipulation with the Trustee and HNB.

motions, and the parties engaged in discovery and discovery-related litigation until an order was entered on September 8, 2017, staying the proceedings as to the Defendants involved in the above-captioned bankruptcy case here. Judge Stamp continued to adjudicate transfer-related issues after HNB filed its Motion to Refer and Transfer Venue on September 8, 2017. Importantly, HNB filed a Motion for Summary Judgment against the non-stayed Defendants, Duane Yost, Gregory Laughlin, James Stephens, Jr., and Monica Francisco on December 29, 2017. That Motion for Summary Judgment was transferred along with the entire civil action approximately two months later.

The second civil action, *Hard Rock Exploration, Inc., Caraline Energy Company, Blue Jacket Gathering, LLC, Blue Jacket Partnership, Brothers Realty, LLC, James Stephens, Jr., Monica Francisco, Duane Yost, and Gregory Laughlin v. The Huntington National Bank and Chad Prather*, had been pending since March 21, 2016, and was based on lender liability claims. Specifically, the Plaintiffs in that case alleged, among other things, fraud, deceit, interference with prospective business advantage, breach of contract and economic duress. After adjudicating injunction requests and dispositive motions, and overseeing discovery, the Circuit Court of Monongalia County transferred that proceeding here on February 21, 2018.

As to adversary proceeding nos. 2:18-ap-2005 and 2:17-mp-2001, the parties agreed to stay the matters (via several filings) until May 1, 2019. The reason for the stay was a pending sale in the main bankruptcy case. According to the final joint motions to extend the stay of adversary proceedings (filed in both adversary proceedings), the parties believed that "[t]he outcome of the sale process w[ould] affect the litigant parties' respective positions and strategies with respect to litigating and/or settling the Adversary Proceedings."

The sale to which the parties referred in the stay extension motions was initiated

when Trustee Leasure filed a Motion for an Order Establishing Bidding Procedures for the Sale of Substantially All of the Debtors' Assets and Assets of Limited Partnerships Free and Clear of Liens (the "Bidding Procedures Motion") [dckt. 716] on December 19, 2018. Importantly, at no time did any of the Objectors file written objections to the Bidding Procedures Motion, nor did they voice resistance to the motion at any of the hearings. The Court granted the Bidding Procedures Motion on January 11, 2019. The sale proceeded according to the approved procedures, and the Court eventually authorized the sale on March 21, 2019.

Pursuant to the aforementioned Final Stipulation, the Trustee and HNB moved in both of the adversary proceedings on May 14, 2019, to dismiss their claims against each other (the Trustee acting in his capacity as representative of the Debtors). Only then did the Objectors announce their opposition, submitting filings in both of the adversary proceedings and the main bankruptcy case. The Trustee moved to strike the Objectors' filings.

The Court held a hearing on June 27, 2019, and, after hearing the parties' arguments, ordered further briefing. The Objectors were invited to file combined pleadings, as were HNB and the Trustee.

B.  **The Parties' Arguments**

The Objectors challenge the Trustee's Motions to Dismiss on numerous grounds. The recurring theme, however, is that the Objectors oppose the relief granted in the Final Stipulation, which is now being implemented through the Motions to Dismiss. They insinuate bad faith on the part of both the Trustee and HNB and accuse those two entities of hiding and "misnaming" the motion which led to the Final Stipulation.

First, the Objectors contend they have standing or, at least, derivative standing. They assert they are parties in interest with legal and pecuniary interests in these proceedings by

7

virtue of being equity stakeholders in the bankruptcy case, guarantors of the Debtors' loan obligations, and named parties in the two adversary proceedings.

Second, they assert that the Debtors are indispensable parties to the adversary proceedings under *Federal Rule of Civil Procedure* 19 and they thus cannot be dismissed. On a related note, they dispute that the Debtors abided by *Federal Rule of Bankruptcy Procedure* 9019 in filing for approval of the Final Stipulation, and, for good measure, that the Court lacked sufficient information to evaluate the Final Stipulation pursuant to long-standing caselaw settlement analysis factors. Third, they assert that the Final Stipulation was approved too quickly, in violation of Rule 2002(a)(3) and Local Rule 7001(a). Fourth, they contend that the Trustee violated Rule 41 and Rule 7041 as the Final Stipulation lacked the signatures of all the parties to the pertinent adversary proceedings.

Fifth, they assert a lack of information regarding the settlement memorialized in the Final Stipulation. They claim they did not have access to the terms and conditions of the agreement, and they request further detail from HNB on how it applied the funds it received through the bankruptcy case. Sixth, they allege a lack of transparency and bad faith on the part of HNB and consistently question the whereabouts of a $3 million sum. Seventh, they note the discovery process in the adversary proceedings had not been concluded at the time the Final Stipulation was approved. Eighth, the Objectors challenge the sale of several life insurance policies and reiterate that they have received no information respecting how the proceeds relating to those policies were applied to the Debtors' outstanding indebtedness.

Ninth, and perhaps most puzzling, is the Objectors' contention that inasmuch as the two adversary proceedings were stayed pursuant to agreed orders while the Final Stipulation was presented and approved, that the Final Stipulation and the actions taken by the Trustee and HNB

8

in the main case violated those stays. The Objectors also assert that, while they were consulted regarding the adversary proceeding stays, they were not involved in any settlement discussions with the Trustee or HNB, which would later be memorialized in the Final Stipulation. The Objectors point to a conference call with the Trustee and HNB during which they expressed concerns over a draft of the Final Stipulation. They assert that they were assured the stipulation would not prejudice or adversely affect their claims or their status in the case. On a related note, the Objectors assert they were not consulted when the cash collateral budget memorialized in the Final Stipulation was developed.

Tenth, the Final Stipulation contains benchmark dates. The Objectors contend that, inasmuch as those time limits were not met, the Final Stipulation is void and the Motions to Dismiss are improper.[2] Eleventh, the Objectors assert that the long-ago entered, and earlier mentioned, memorandum opinion setting the parameters of HNB's security interest in the Debtors' assets did not actually address the underlying validity and enforceability of the security instruments that were the basis for those interests. Without that determination, the Objectors assert that any stipulation confirming the validity of the liens is premature.

Eleventh, regarding the Final Stipulation and the settlement, the Objectors allege insufficient consideration to justify the releases between HNB and the Trustee. Finally, the Objectors generally oppose the Motions to Dismiss and the Final Stipulation because their rights will be substantially affected, inasmuch as the Debtors are guarantors on loans made between

---

[2] The Final Stipulation states in paragraph 27 that it "shall commence upon approval by the Bankruptcy Court, and end on January 31, 2019." That is the single reference to an "end date," and, in context, is within several paragraphs referencing Debtors' authority to use cash collateral. Properly understood, January 31, 2019, is simply the date upon which the cash collateral portions of the agreement expire. The Objectors insistence otherwise unfortunately surfaces the rather strained nature of their positions generally.

themselves and HNB. The Objectors assert that they have never waived their position that the claims and counterclaims in the adversary proceedings are important.

In a nutshell, the Trustee and HNB (together, the "Movants"), respond as follows: (1) the objections arrived more than a year after the Final Stipulation was approved and after the Trustee was allowed to use $3.3 million of HNB's cash collateral, (2) the Objectors had no right to be part of the settlement, inasmuch as the Trustee is the only entity authorized to sue and be sued on behalf of the Debtors, (3) the Trustee nevertheless appropriately analyzed the civil actions and determined the best course for the Debtors, and (4) the Final Stipulation in no way affects the Objectors' claims against HNB, nor does it affect HNB's claims against the Objectors.

The crux of the Movants' arguments, however, is that inasmuch as the Objectors are attacking the Final Stipulation – which in turn gave rise to the Motions to Dismiss – they must first satisfy the rigors of Rule 60(b) and obtain vacatur of the order authorizing the Final Stipulation. The Movants note that any Rule 60(b) motion would now be both untimely and plainly short of the demanding substantive requirements for vacatur.

## II.

**A.    Legal Standards and Analysis**

### 1.    Standing

To demonstrate standing, "a party must have suffered a 'concrete and particularized injury in fact,' that is fairly traceable to the challenged action of the defendant, and that can be redressed by a favorable judicial decision." *In re Alpha Natural Resources, Inc.*, 544 B.R. 848, 855 (Bankr. E.D. Va. 2016) (quoting *Lexmark Int'l., Inc. v. Static Control Components*, 572 U.S. 118 (2014)). The Bankruptcy Code contains an additional standing requirement for intervention

10

in a Chapter 11 proceeding, namely, 11 U.S.C. § 1109(b):

> A party in interest, including the debtor, the trustee, a creditor's committee, an equity security holders committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1190(b). Courts have determined that "[s]ection 1109(b) must be construed broadly to allow all parties affected to appear and be heard." *In re Keim*, 212 B.R. 493, 497 (Bankr. D. Md. 1997) (citing *Unsecured Creditors' Committee v. Marepcon Financial Corp. (In re Bumper Sales, Inc.)*, 907 F.2d 1430 (4th Cir. 1990)). If an entity does not fall into the listed categories, it may be allowed standing as a "party in interest," a term undefined in the Bankruptcy Code. *Alpha Natural Resources*, 544 B.R. at 855. In reference to other areas of the Code, "the Fourth Circuit has stated that a 'party in interest' is 'generally understood to include all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.'" *Id.* (quoting *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir.1993)). Importantly, even if a party has a pecuniary interest, "standing can only attach under § 1109(b) if the pecuniary interest would be 'directly affected' by the bankruptcy proceeding." *Id.* (quoting *Hutchinson*, 5 F.3d at 756).

The Objectors are equity shareholders in the Debtors. They are also creditors by virtue of their proofs of claim in the main bankruptcy case. This suffices to vest them with standing.

### 2.    Rule 60(b)

The Movants accurately contend that vacatur of the May 6, 2018, authorization order is a necessary prerequisite for challenging the Final Stipulation and the Motions to Dismiss filed in service thereof. The May 6, 2018, order is subject to set aside, if at all, under Rule 60(b). Rule 60(b) allows the Court to "relieve a party . . . from final judgment, order or proceeding" on a

11

limited number of grounds. The remedy "is extraordinary and is only to be invoked upon a showing of exceptional circumstances." *Compton v. Alton S.S. Co.*, 608 F.2d 96, 102 (4th Cir. 1979). Importantly, binding precedent teaches that relief should not be granted "when the movant attempts 'to raise arguments which could have been raised prior to the issuance of the judgment' or 'to argue a case under a novel theory that the party had the ability to raise in the first instance.'" *Westport Ins. Corp. v. Albert*, 208 Fed. Appx. 222, 227 (4th Cir. 2006) (quoting *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

Rule 60(b) requires that "a party . . . demonstrate (1) timeliness, (2) a meritorious defense, (3) a lack of unfair prejudice to the opposing party, and (4) exceptional circumstances." *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017) (citing *Dowell v. State Farm Fire & Cas. Auto Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)). Respecting timeliness, the Rule requires the proponent of relief to demonstrate she has acted "within a reasonable time." *AMH Roman*, 859 F.3d at 300. Motions filed pursuant to Rule 60(b)(1) – (3) must be made within one year after entry of the order challenged. Fed. R. Civ. P. § 60(c)(1).

Once past the timeliness gateway, the proponent "must satisfy one of the six specific subsections of Rule 60(b)." *Id*. (internal quotation marks omitted). Only four of the Rule 60(b) subdivisions conceivably apply here, namely, (1), (2), (3) and (6). These grounds permit relief when there has been "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or misconduct by an opposing party . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. § 60(b)(1) – (3), (6).

Respecting timeliness, the Trustee moved for approval of the Final Stipulation on

April 23, 2018. The Objectors were served. They admit as much; specifically, they "were aware of these filings. [They] read it [sic]. So [they're] not saying that [they] weren't aware." [Dckt. 1024, 39:8-9]. No objections were lodged. As noted, the Court approved the Final Stipulation on May 6, 2018. No objections were lodged. No motion to reconsider was filed. No appeal was taken.

It was not until over a year later that the Trustee filed the Motions to Dismiss, which were explicitly contemplated in the Final Stipulation. It was only at that point the Objectors realized their unfortunate default. During the hearing in this matter, the Objectors stated no justifiable basis for their inexcusable delay. To the extent the Objectors persist that the stay in the adversary proceedings resulted somehow in a stay in the main case -- obviating their obligation to timely object to the Final Stipulation -- the assertion runs perilously close to the sanctionable.

Indeed, the Objectors admitted that they did not timely object to either the substance or the procedure of the Final Stipulation approval, saying that "they felt it was in the best interest of the estate to allow the Trustee to do the work to try to garner the assets and to sell the property for the highest and best dollar." [Dckt. 1024, 27:6-9]. The objections simply come too late under Rule 60(b).

The one-year bar does not affect the assertion under subdivision (6), which permits vacatur for "any other reason that justifies relief." But there is simply no foundation upon which to build the substantial substantive edifice necessary for vacatur under that extraordinary catch-all.

**IT IS, ACCORDINGLY, ORDERED** that the Objections (filed in the main case and in both adversary proceedings) be, and hereby are, **STRICKEN** and the Motion to Strike is **GRANTED. IT IS FURTHER ORDERED** that the Motions to Dismiss (filed in both adversary proceedings) be, and hereby are, **GRANTED.**